IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————— : | |
| : | |
| COOPER HOSPITAL / UNIVERSITY : | |
| MEDICAL CENTER : | CIVIL ACTION |
| One Cooper Plaza : | NO. 1:15-cv-1606 |
| Camden, N.J. 08103 : | |
| : | |
| HACKENSACK UNIVERSITY MEDICAL : | FILED ELECTRONICALLY |
| CENTER : | |
| 30 Prospect Avenue : | |
| Hackensack, New Jersey 07601 : | |
| : | |
| DEBORAH HEART & LUNG CENTER : | COMPLAINT |
| 200 Trent Road : | |
| Browns Mills, New Jersey 08015 : | |
| : | |
| PALISADES MEDICAL CENTER : | |
| 7600 River Road : | |
| North Bergen, New Jersey 07047 : | |
| : | |
| EAST ORANGE GENERAL HOSPITAL : | |
| 300 Central Avenue | |
| East Orange, New Jersey 07018 | |

KENNEDY MEMORIAL HOSPITAL
500 Marlboro Avenue
Cherry Hill, New Jersey 08034

ST. MARY'S HOSPITAL
350 Boulevard
Passaic, New Jersey 07055

JERSEY SHORE UNIVERSITY HOSPITAL
1350 Campus Parkway
Neptune, New Jersey 07753

ROBERT WOOD JOHNSON UNIVERSITY
HOSPITAL
One Robert Wood Johnson Place
New Brunswick, New Jersey 08903

Plaintiffs,

**v.**

**SYLVIA MATHEWS BURWELL,**
**Secretary, Department of Health**
**and Human Services**
**200 Independence Avenue, S.W.**
**Washington, D.C. 20201**

    **Defendant.**

_____

Plaintiffs by and through their undersigned attorneys, bring this action for judicial review against Defendant Sylvia Mathews Burwell, in her official capacity as Secretary of the United States Department of Health and Human Services (the "Secretary") challenging the Medicare Provider Reimbursement Review Board's ("PRRB") dismissal of Plaintiffs' FYE December 31, 2008 PRRB Group Appeal claiming a lack of jurisdiction over the matter and the Administrator's subsequent declination to review the PRRB's decision, and aver as follows:

<u>**Jurisdiction and Venue**</u>

1.   This is a civil action brought to obtain judicial review of a final agency decision rendered by the PRRB.

2.   This action is timely filed pursuant to 42 U.S.C. § 1395oo(f)(1) within sixty days of the PRRB's final decision with regard to the controversy at issue in this complaint.

3.    The instant action arises under Title XVIII of the Social Security Act, as amended 42 U.S.C. §§ 551 et seq. hereinafter referred to as the "Medicare Act" or the "Act", which establishes the Medicare program (the "Medicare Program" or the "Program"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.

4.    This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision).

5.    The total amount of payment due to Plaintiffs at issue in this complaint exceeds $10,000.00.

6.    Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f).

7.    This Court has authority to grant the relief requested pursuant to 42 U.S.C. § 1395oo(f).

## **Parties**

8.    Plaintiffs include the following providers that participated in the Medicare and Medicaid programs at all times relevant to this action:

  a. Cooper University Hospital / Medical Center, Provider No. 31-0014

  b. Hackensack University Medical Center, Provider No. 31-0001

  c. Deborah Heart & Lung Center, Provider No. 31-0031

  d. Palisades Medical Center, Provider No. 31-0003

3

e. East Orange General Hospital, Provider No. 31-0003

f. Kennedy University Hospital, Provider No. 31-0086

g. St. Mary's Hospital, Provider No. 31-0006

h. Jersey Shore University Hospital, Provider No. 31-0073

i. Robert Wood Johnson University Hospital, Provider No. 31-0038

9.  Plaintiffs serve a substantial number of low-income patients and qualified as disproportionate share hospitals under Medicare for the fiscal year in question.

10.  Defendant Sylvia Mathews Burwell is the Secretary of the United States Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, DC 20201 and, as such is the official responsible for operations of the Medicare program.

## Factual Background

A.  *Medicare Payments and Cost Reporting*

11.  Congress enacted Medicare (Title XVIII of the Social Security Act) in 1965.  Medicare is a public health insurance program for individuals age 65 or older, for qualifying disabled persons, and for individuals suffering from end-stage renal disease.  42 *U.S.C.* § 1395 *et seq.*

12.  Among the benefits covered by Medicare are hospital services, which are reimbursed under Part A of the Medicare program.

4

13.   The   Secretary   has   designated   responsibility   for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration.  CMS, in turn, has contracted day-to-day audit and payment functions under Medicare Part A to organizations known as "fiscal intermediaries."

14.   At the close of each fiscal year, a hospital must submit to its fiscal intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare. 42 *C.F.R.* §§ 413.24 and 413.50.  The intermediary is required to audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the cost reporting period.  42 *C.F.R.* § 405.1803.

15.   For general hospitals paid under the Medicare DRG system, the cost reporting process includes a final reconciliation of a hospital's interim Medicare DSH adjustments based upon schedules containing relevant statistics (including total Title XIX medical assistance days) for the year in question.

16.   If a hospital is dissatisfied with its intermediary's final determination of total Medicare program reimbursement for

a cost reporting period, and at least $10,000 is in controversy, it has a right to obtain a hearing before the Provider Reimbursement Review Board by filing an appeal within 180 days of receiving its NPR.  42 *U.S.C.* § 1395oo(a).

17.  A decision of the PRRB is final unless the Secretary, on the Secretary's own motion, and within 60 days after the provider of services is notified of the PRRB's decision, reverses, affirms, or modifies the PRRB's decision. 42 U.S.C. § 1395oo(f)(1). 15. A provider has the right to obtain judicial review of any final decision of the PRRB, including a decision of the PRRB declining to assert jurisdiction, or any reversal, affirmation, or modification by the Secretary. 42 U.S.C. § 1395oo(f)(1).

B.   *Medicare's Policies Regarding Payment for DSH Adjustments*

18.  Under the prospective payment system ("PPS"), Medicare's payments for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments. 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412.

19.  In enacting the Medicare PPS, Congress authorized the Secretary to provide one such adjustment for hospitals that serve a disproportionate share of low-income patients (*i.e.*, "disproportionate share hospitals" or "DSH").  Consolidated

6

Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub. L. No. 99-272, § 9105 (1986); 42 *U.S.C.* § 1395ww(d)(5)(F)(i)(I).

20. After the Secretary had failed to promulgate rules providing for DSH adjustments, Congress amended the statute effective May 1986, to prescribe standards for protecting hospitals that serve large numbers of low-income patients.

21. Under the statute, as amended, whether a hospital qualifies for, and the amount of its Medicare DSH payment, both turn on a hospital's disproportionate patient percentage." 42 *U.S.C.* § 1395ww(d)(5)(F)(v).

22. The disproportionate patient percentage is the sum of two fractions (expressed as a percentage) – the so-called "Medicare" and "Medicaid" (or non-Medicare) fractions – for a hospital's costs reporting period. 42 *U.S.C.* § 1395ww(d)(5)(F)(vi). These fractions are used by Congress as "proxies" for quantifying a hospital's services to low-income patients.

23. As the Ninth Circuit observed in *Portland Adventist Medical Ctr. v. Thompson*, 399 *F.*3d 1091, 1095 (*quoting Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 *F.*3d 1261, 1265 (9th Cir. 1996)) and other Circuit Courts have concurred:

> Congress' "overarching intent" in passing the [Medicare] disproportionate share provision was to supplement the prospective payment system payments of hospitals serving "low

income" persons. ... Congress intended the
Medicare and Medicaid fractions to serve as a
proxy for all low-income patients.

24.  The Medicare fraction is based on the number of days attributable to patients entitled to both Medicare Part A and supplemental security income ("SSI") benefits, divided by the total number of days attributable to all patients entitled to benefits under Medicare Part A. 42 *U.S.C.* § 1395ww(d)(5)(F)(vi)(I).

25.  Only the second, or so-called Medicaid, fraction is at issue in this case.  The Medicaid fraction is calculated as follows:

> [T]he fraction (expressed as a percentage), the <u>numerator</u> of which is the number of the hospital's <u>patient days</u> for such period which <u>consist of patients who (for such days) were</u> <u>eligible for medical assistance under a State</u> <u>plan approved under Title XIX of this</u> <u>chapter</u>, but who were <u>not entitled to</u> <u>benefits under Part A</u> of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period (emphasis added).

42 *U.S.C.* § 1395ww(d)(5)(F)(vi)(II).  In general, the greater number of patient days included in the numerator of this fraction, the greater the Medicare DSH payment.

26.  The Secretary's implementing regulation, 42 *C.F.R.* § 412.106(b)(4), prescribes calculating the Medicaid fraction as follows:

> The fiscal intermediary determines, for the same cost reporting period used for the first computation, the number of the hospitals <u>patient days of service</u> for which patients <u>were eligible for Medicaid</u> but not entitled to Medicare Part A, and divides that number by the total number of patient days in the same period. (Emphasis added).

42 *C.F.R.* § 412.106(b)(4)(i), in turn, provides that a patient is deemed eligible for Medicaid "if the patient is eligible for inpatient hospital services under an approved State Medicaid plan."

27. In implementing this provision for approximately a decade, hospitals and fiscal intermediaries had routinely included in the above-referenced numerator all inpatient days that were funded under a state's medical assistance program, including those for which hospitals received payments categorized under a State Plan as Medicaid DSH payments.

28. CMS "clarified" its interpretation of the Medicare DSH calculation in December 1999 through the issuance of Program Memorandum (PM) A-99-62. CMS took the position that inpatient days covered under a State Plan through Medicaid DSH adjustments could not be counted in the Medicare DSH percentage calculation, and that the statutory "focus [was] on the patient's eligibility for Medicaid benefits."

29. Recognizing that hospitals and fiscal intermediaries had not distinguished among medical assistance days funded

9

through a State Plan on the basis of the patients' eligibility for traditional Medicaid, PM A-99-62 "grandfathered" the inclusion of various "charity care" days in the Medicare DSH calculation for cost reporting periods beginning before January 1, 2000.  The Secretary reaffirmed this position in the Federal Register on August 1, 2000, 65 *Fed. Reg.* 47054, 47087, while simultaneously acknowledging "that these [Charity Care] days may be included in the calculation of a State's Medicaid DSH payments" under an approved State Plan.

30.  Ultimately, the fiscal intermediary refused to include Charity Care days in the Medicaid Proxy of the Medicare DSH calculation and Plaintiffs have a right to appeal this legal issue.

C.  *Plaintiffs' Medicare Cost Report and Appeal to the PRRB*

31.  Plaintiffs timely filed their cost reports and were issued NPRs for FYE December 31, 2008 on March 14, 2014.

32.  On September 9, 2014 Plaintiffs appealed their NPRs to the PRRB in a Group Appeal challenging the refusal to include Charity Care days in the Medicaid Proxy of the Medicare DSH calculation.

D.  *Jurisdictional Issues at the PRRB*

33.  Following the filing of Plaintiffs' PRRB Group Appeal, there was no jurisdictional challenge made by the PRRB. Instead,

the PRRB assigned a case number and issued a scheduling order on September 16, 2014. Moreover, on September 19, 2014, the fiscal intermediary, Novitas Solutions, Inc., issued its 30 day acknowledgement letter wherein it acknowledged that jurisdiction was proper.

34.   Thereafter, on July 9, 2015, Plaintiffs filed for expedited judicial review asserting that the legal question before the PRRB was beyond its authority to decide. Included therewith were Plaintiffs' jurisdictional documentation and brief in support of the relief sought.

35.   The Intermediary filed no opposition or other response to Plaintiffs' requested relief for expedited judicial review.

36.   Nevertheless, on August 4, 2015, Plaintiffs received a decision dated July 30, 2015 from the PRRB denying expedited judicial review and dismissing Plaintiffs' Group Appeal claiming a lack of jurisdiction. Specifically, the PRRB alleged that Plaintiffs failed to demonstrate that they claimed New Jersey Charity Care days as a protested item on their cost reports. A decision by the PRRB to decline to exercise jurisdiction is a final, appealable decision. See, e.g., Athens Community Hospital, 686 F.2d 989 (D.C.Cir. 1982); see also Social Security Act, § 1878(f)(1), 42 U.S.C.A. § 1395oo(f)(1).

37.   Plaintiffs sought review by the Administrator of CMS by submitting to the Administrator a legal brief outlining the PRRB's misunderstanding and submitting additional documentation to establish that in fact Plaintiffs had timely and effectively preserved the legal issue for appeal before the PRRB.

38.   Despite Plaintiffs' request, on September 25, 2015, the Administrator of CMS informed Plaintiffs that it was declining to review the PRRB's jurisdictional determination.

## COUNT I

**THE PRRB'S ACTION IN SUMMARILY DISMISSING PLAINTIFFS' PRRB GROUP APPEAL ON JURISDICTIONAL GROUNDS WITHOUT PROVIDING PLAINTIFFS AN OPPORTUNITY TO ADDRESS THE PRRB'S CONCERNS AND IN LIGHT OF THE FACT THAT PLAINTIFFS DID TIMELY AND EFFECTIVELY PRESERVE THE LEGAL ISSUE FOR APPEAL BEFORE THE PRRB CONSTITUTES AN ARBITRARY AND CAPRICIOUS DECISION AND GENERALLY AN ABUSE OF DISCRETION.**

39.   Plaintiffs hereby incorporate by reference the paragraphs above as though set forth at length herein.

40.   Pursuant to 42 U.S.C. § 1395oo(f)(1), the Secretary's action is governed by the provisions of the Administrative Procedures Act ("APA"). Section 706 of the APA requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

12

41.  As discussed above, Plaintiffs timely and effectively preserved their rights to appeal the legal issue before the PRRB thereby granting the PRRB jurisdiction over Plaintiffs' PRRB Group Appeal.

42.  Nevertheless, rather than moving on the jurisdictional issue to provide Plaintiffs with an opportunity to address the PRRB's jurisdictional concerns, it summarily dismissed the appeal despite the prior actions of both the PRRB and its fiscal intermediary indicating that jurisdiction was proper.

43.  Furthermore, Plaintiffs attempted to appeal to the Administrator of CMS explaining the PRRB's confusion and submitting additional evidentiary support of Plaintiffs' timely and effective preservation for appeal thereby establishing jurisdiction. Nonetheless, the Administrator declined to review the PRRB's decision.

44.  Therefore, the PRRB and Administrator's decisions are arbitrary, capricious and an abuse of discretion in that they have dismissed Plaintiffs' PRRB Group Appeal on jurisdictional grounds without giving Plaintiffs an opportunity to address their concern and despite the fact that Plaintiffs have submitted evidence to confirm this legal issue was timely and effectively preserved for appeal.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter an order:

A.   Stating that the PRRB has jurisdiction over Plaintiffs' PRRB Group Appeal and remanding to the PRRB to reassess Plaintiffs' request for expedited judicial review;

B.   Legal fees and costs of suit incurred by Plaintiffs; and

C.   Awarding such other relief as this Court may deem just and appropriate.

Respectfully submitted,

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

By:   */s/ John Zen Jackson*

John Zen Jackson - D.C. Bar No. 346775
jjackson@mdmc-law.com
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962-2075
973-993-8100
973-425-0161 (fax)

Dated:   October 1, 2015